IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| KIMBERLY J. HARRIS, ) | CIVIL ACTION NO. 9:09-0028-HFF-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)[1] in September 2005 alleging disability as of November 19, 2004 due to diabetic

---

[1] Although the definition of disability is the same under both DIB and SSI; Emberlin v. Astrue, No. 06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot establish that she was disabled during the insured period for DIB may still receive SSI benefits if she can establish that she is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005 WL 83841, at ** 3 (7th Cir. Jan. 6, 2005). See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir. 1999)[Discussing the difference between DIB and SSI benefits]. Under SSI, the claimant's entitlement to benefits (assuming they establish disability) begins the month following the date of filing the application forward. Pariseau v. Astrue, No. 07-268, 2008 WL 2414851, * 13 (D.R.I. June 13, 2008).



neuropathy in her feet and hands. (R.pp. 92-95, 116, 123).[2] Plaintiff's claims were denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on January 25, 2008. (R.pp. 25-54). The ALJ thereafter denied Plaintiff's claims in a decision issued February 29, 2008. (R.pp. 11-21). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-6).

Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

**Scope of review**

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct**

---

[2]The record reflects that Plaintiff had filed a prior application for benefits in January 2005, which was denied initially and not appealed. (R.pp. 85-91, 103).



**a verdict were the case before a jury, then there is "substantial evidence."**
[emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## Discussion

A review of the record shows that Plaintiff, who was thirty seven (37) years old when she alleges she became disabled, has a high school education with past relevant work experience as a daycare worker, medical assistant, and product assistant. (R.pp. 85, 92, 122, 137). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months.

After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff suffers from the severe[3] impairments of degenerative disc and joint disease, diabetes mellitus, and peripheral neuropathy, rendering her unable to perform any of her past relevant work, she nevertheless retains the residual functional capacity (RFC) to perform a full range of

---

[3]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

3



sedentary work activity[4], and is therefore not disabled. (R.pp. 13, 15, 19-20). Plaintiff asserts that in reaching this decision, the ALJ erred by failing to consider all of Plaintiff's impairments and their combined effect on Plaintiff's ability to work, and by relying on the Medical-Vocational Guidelines (i.e. the "Grids") to direct a finding of not disabled.[5] After careful review and consideration of the record and arguments presented, the undersigned is constrained to agree with the Plaintiff that the ALJ did err by not properly evaluating the evidence and then improperly using the Grids to direct a finding of not disabled in this case. Remand is therefore required.

Because the ALJ determined that Plaintiff is unable to perform her past relevant work, the burden shifted to the Commissioner to show that other jobs exist in significant numbers which Plaintiff could perform. Pass v. Chater, 65 F.3d 1200, 1201-1203 (4th Cir. 1995). In appropriate circumstances, the ALJ can meet this burden by using the Grids to direct a finding that a claimant is not disabled. See Hays, 907 F.2d at 1458 [affirming denial of benefits to claimant where the Medical-Vocational Guidelines directed a finding of not disabled]. However, the Grids do not apply to a claimant who suffers from severe non-exertional impairments, or who cannot perform the full range of work activity within a Grid category. Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989); see 20

---

[4]Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2005).

[5]"The grids are matrices of the 'four factors identified by Congress -- physical ability, age, education, and work experience -- and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy.'" Daniels v. Apfel, 154 F.3d 1129, 1132 (10th Cir. 1998) (quoting Heckler v. Campbell, 461 U.S. 458, 461-462 (1983)). "Through the Grids, the Secretary has taken administrative notice of the number of jobs that exist in the national economy at the various functional levels (i.e., sedentary, light, medium, heavy, and very heavy.)" Daniels, 154 F.3d at 1132.



C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h). An impairment is "severe" if it *significantly* limits a claimant's physical or mental ability to do basic work activities; 20 C.F.R. § 404.1521(a); See Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987); and in this case the ALJ found that Plaintiff's diabetes mellitus and peripheral neuropathy were both severe non-exertional impairments. (R.p. 13). See Roseboro v. Astrue, No. 07-5204, 2008 WL 2224817 at * 2 (D.N.J. May 27, 2008) ( citing Williams v. Barnhart, 87 Fed.Appx. 267, 270 (3d Cir. Jan. 26, 2004)(citing Singleton v. Schweiker, 551 F.Supp. 715, 723-724 (E.D.Pa. 1982)[observing that diabetes is a non-exertional impairment])); Bell v. Astrue, No. 06-1009, 2009 WL 1043926 at * * 5-6 (M.D.Tenn. Apr. 17, 2009)[discussing peripheral neuropathy being a non-exertional impairment]. Notwithstanding the existence of these severe impairments, however, the ALJ found that Plaintiff could perform the *full range* of sedentary work. 20 C.F.R. § 404.1567(a)(2005). This finding constitutes reversible error, as it is readily apparent that Plaintiff cannot perform the full range of sedentary work with these severe non-exertional impairments.

Peripheral neuropathy often causes numbness and pain, as well as loss of sensation, in the hands and feet; see Mayo Clinic http://www.mayoclinic.com/health/peripheral-neropathyDS00131.com [last visited Dec. 1, 2009]; and most unskilled[6] sedentary jobs require good use of the hand and fingers for repetitive hand finger actions. See S.S.R. 83-10, Determining Capability to Do Other Work - The Medical-Vocational Rules of Appendix 2, 1983 WL 31251, at * 5 ["Most unskilled sedentary jobs require a good use of the hands and fingers for repetitive hand-finger actions."]. While it is true that the Grids may still be used to direct a finding of not disabled where non-exertional impairments, even severe, do not significantly reduce a claimant's occupational

---

[6]All of the jobs reflected by the Medical-Vocational Guidelines are unskilled. 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(b); see also Rule 201.28 of the Medical Vocational Guidelines.



base; cf. Ortiz v. Secretary of Health & Human Scrvs., 890 F.2d 520, 524 (1st Cir. 1989); such a conclusion is not justified in this case. In addition to finding that Plaintiff's peripheral neuropathy was a severe impairment, thereby *significantly* limiting her physical ability to do basic work activities; see 20 C.F.R. § 404.1521(a) [an impairment or combination of impairments deemed to be "severe" significantly limit the physical or mental ability to do basic work activities]; the ALJ also specifically discussed the medical record showing that Plaintiff suffers from reduced extremity dexterity due to her condition. (R.pp. 15-19, citing to R.pp. 200-207, 217-229, 242-244, 258-265 [Records of the Medical University of South Carolina]; 317, 339). The limitations reflected in the medical records cited by the ALJ in her decision would obviously affect the occupational base for unskilled sedentary work, precluding reliance on the Grids to direct a finding of not disabled. Walker, 889 F.2d at 49 [Grids do not apply to a claimant who suffers from severe non-exertional impairments, or who cannot perform the full range of work activity within the Grid category]; S.S.R. 83-10, 1983 WL 31251, at * 5 ["Most unskilled sedentary jobs require a good use of the hands and fingers for repetitive hand-finger actions"]. However, the ALJ does not state that she rejected this evidence, nor does she alternatively explain how she reached her decision that Plaintiff could perform the full range of sedentary work in light of these findings and medical records.[7] Further, even in rejecting the extent of pain and limitation testified to by the Plaintiff at the hearing, the ALJ acknowledged that her right hand strength was decreased, her sensation was decreased in her fingers, and that she had been advised to work with a splint for her right hand. (R.pp. 17-18).

---

[7]While the ALJ does reference the MUSC outpatient records of November 5, 2004 showing that Plaintiff's right hand fingers had normal abduction and adduction with no clubbing, cyanosis, or edema; (R.pp. 17-18; see R.p. 264); this is the same report that showed decreased right hand strength with decreased sensation, resulting in a recommendation that Plaintiff modify her work and use a splint for her right hand. (R.pp. 264-265). In any event, this medical report is also dated two weeks *prior* to Plaintiff's alleged disability onset date.



While it is the ALJ's job to weigh the evidence and reach a conclusion based on that oftentimes conflicting evidence, where the ALJ finds an RFC greater than is reflected in the evidence, the ALJ is required to explain her rejection of that evidence. Cf. Bailey v. Barnhart, No. 01-3474, 2002 WL 1401225 at **4 (7th Cir. July 26, 2002) [case remanded where ALJ did not adequately explain her rationale for discounting the recommendations of one of plaintiff's treating physicians]; Morales v. Apfel, 225 F.3d 310, 317-318 (3d Cir. 2000) [ALJ must explicitly weigh the evidence and explain his rejection of the medical opinion of a treating physician]; Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990)["Implicit" rejection of treating physician's opinion cannot satisfy Administration's obligation to set forth "specific, legitimate reasons" for rejecting a treating physician's opinion]. The ALJ's failure to set forth her reasons for (apparently) rejecting the cited medical evidence, or to alternatively explain how she reached the RFC stated in the decision while accepting this evidence, requires reversal of the decision. Cotter v. Harris, 642 F.2d 700 (3rd Cir. 1981) [listing cases remanded because of ALJ's failure to provide explanation or reason for rejecting or not addressing relevant probative evidence]; Morales, 225 F.3d at 317-318 [ALJ must explicitly weigh the evidence and explain his rejection of the medical opinion of a treating physician]; Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001)[Court cannot affirm a decision on a ground that the ALJ did not himself invoke in making the decision]. Further, if the ALJ accepts the findings of the cited medical records and reaches a determination that Plaintiff cannot perform the full range of sedentary work with her limitations, it will be necessary to call a vocational expert to address Plaintiff's ability to perform sedentary work in response to a proper hypothetical which includes all of the Plaintiff's impairments. Fenton v. Apfel, 149 F.3d 907, 910 (8th Cir. 1998) ["The Secretary is required to produce vocational expert testimony concerning availability of jobs which a person with a claimant's particular characteristics can perform, if...he or she is precluded from performing a full range of a



particular work classification...."].

Finally, with respect to the remainder of Plaintiff's complaints concerning the decision, on remand the ALJ will be able to reconsider and re-evaluate Plaintiff's credibility and the medical evidence as part of the reconsideration of this claim. Hancock v. Barnhart, 206 F.Supp.2d 757, 763-764 (W.D.Va. 2002) [on remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted *de novo*].

## **Conclusion**

Based on the foregoing, and pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner with remand in Social Security actions under Sentence Four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be **reversed**, and that this case be **remanded** to the Commissioner for the purpose of a proper evaluation, discussion and findings with respect to the medical records relating to Plaintiff's diabetes and peripheral neuropathy, and for such further administrative action as is deemed necessary and appropriate. See Shalala v. Schaefer, 113 S.Ct. 2625 (1993).

_____
Bristow Marchant
United States Magistrate Judge

December 2, 2009
Charleston, South Carolina

